[Civ. No. 5503. Fourth Dist. Jan. 4, 1957.]

ROBERT C. WILSON et al., Respondents, v. R. J. HISEY et al., Defendants; GEORGE W. SWIFT et al., Appellants.

James L. King for Appellants.

J. H. Petry for Respondents.

MUSSELL, J.—The complaint in this action is for rescission, fraud and damages. At the conclusion of the trial, plaintiffs moved to amend the complaint to conform to the evidence and to show an additional cause of action based on negligence of the defendants. This motion was granted and the court rendered judgment in favor of plaintiffs and awarded damages to them occasioned by the negligence of defendants George Swift and Sherman Stewart. They appeal from the judgment and contend (1) That the evidence does not support the findings and conclusions of law; and (2) That the findings, conclusions of law and judgment are contrary to the law.

On December 28, 1952, plaintiffs called at the real estate office of the Swift Realty Company in Fontana, in San Bernardino County. They desired to purchase a chicken ranch in that area and discussed the matter with defendant

Sherman Stewart, who was a salesman employed by defendant George Swift, a real estate broker who owned and operated the Swift Realty Company. Stewart examined a listing of a ranch, signed by R. J. Hisey and his wife. This listing, by its terms, expired December 24, 1952. It described the ranch and further provided that the buyer was to assume an existing trust deed balance of approximately $19,000, payable $250 or more monthly, with 6 per cent interest included. Plaintiff Wilson asked Stewart if there was any other encumbrance on the property except this trust deed and Stewart told him and his wife that there was none. Plaintiffs and Stewart then went to see the ranch and talked with Mr. and Mrs. Hisey. However, it does not appear that anything was said about the terms of the proposed purchase. Plaintiffs returned to the Swift Realty Company office on the ensuing two or three Sundays. On one of these visits, a Mr. Feiser, who was in the office and who had sold the ranch to the Hiseys, was asked if he thought the Hiseys would consider a trade and he replied that in his opinion Mr. Hisey would not trade. Stewart suggested to plaintiffs that they lease the property and also procure an option to buy it. He told them that the Hiseys would lease it for $200 per month, $2,400 a year. On January 18, 1953, plaintiffs came to the office of the Swift company and told Stewart they had decided to lease the Hisey ranch and offered to pay $2,400 for a year's lease, $2,000 down and the balance of $400 in August. Stewart told plaintiffs that Mr. Swift would draw up the papers and that he could handle it very well for them. Mr. Swift was introduced to plaintiffs by Stewart, who then explained the terms of the proposed transaction. Swift and Stewart made written notes and, after discussing some of the terms of the agreement with Feiser, Swift typed out the lease and option involved in this action.

The lease, dated and executed on January 18, 1953, was for the term of one year ending February 4, 1954, for a total rental of $2,400, $2,000 to be paid in cash and the further sum on or before August 5, 1953. It provided further, as follows:

"There is an existing Deed of Trust on above property, of an approximate balance at present of $19,000 payable $250.00 or more monthly with 6% interest included. It is agreed by and between Lessor and Lessee that in the event of pending or threatened foreclosure on said Deed of Trust by Trustee, Lessor will immediately thereupon sell, transfer, convey and

assign all his right, title and interest in and to said property to Lessee; and Lessee agrees to pay to Lessor, the sum of $100.00 cash at the time of such conveyancing and to assume the then existing balance on said Deed of Trust.''

On the same date the Hiseys executed a real estate option, expiring February 4, 1954, providing therein that plaintiffs could purchase the property at a price not exceeding $24,000. The option further provided, inter alia, for the assumption by the lessors of the then existing balance on the trust deed, on which the balance was approximately $19,000, payable $250, or more, monthly, with 6 per cent interest included. The consideration recited in the option was the sum of $1.00. Plaintiffs gave a check to Swift for $500 and he, after deducting $72 for the services of his company, delivered a check to the Hiseys for the balance of the deposit, and the following week plaintiffs paid the Hiseys the further sum of $1,500.

Wilson left his employment as service engineer and moved onto the ranch on February 1, 1953, and purchased approximately 2,000 chickens to raise thereon. Within a week or 10 days thereafter, Wilson received information that there was a second trust deed on the property and that the first trust deed called for the payment of $250 monthly, plus interest.

In March, 1953, the Wilsons served notice of rescission of the lease and option on the Hiseys and on April 7, 1953, they moved from the ranch.

Wilson testified that on February 16, 1953, he received a letter from Mr. Hisey, mailed from Texas, in which Hisey stated that he could not make the payments on the property and that his only recourse was to let Wilson take it over as agreed in the lease. Wilson further testified that if he had known there was a second trust deed against the Hisey property, and if he had known that the payment on the first trust deed required the payment of $250, plus interest at 6 per cent on about $19,000, he would not have entered into the transaction. In this connection Mrs. Wilson testified that if she had known the true facts concerning the first and second deeds of trust, she would not have entered into the agreement.

Appellants' answer to the original complaint affirmatively alleges that George Swift and Sherman Stewart acted as agents for the joint parties in the transaction which resulted in the execution and delivery of the lease and option. In appellants' answer to the amendment to the complaint it is

admitted that George Swift and Sherman Stewart prepared a written lease for plaintiffs at the request of and for them. It is further admitted therein that there was a first deed of trust and a second deed of trust on the Hisey ranch, and further that the first deed of trust did provide for monthly payments of $250 per month, together with interest at 6 per cent per annum.

The trial court found, among other facts:

"III.  That it is true that at the time said lease and option were executed there existed two notes secured respectively by first and second deeds of trust against the real property described in said lease and option and that the note secured by the first deed of trust provided for monthly payments of $250.00 on principal, plus payment of interest at 6% per annum; that the note secured by the second deed of trust was still unpaid; that the defendants George Swift and Sherman Stewart did represent to the plaintiff that at that time there was only one note secured by one deed of trust against said property and that said note provided for payments of $250.00 per month, which payments included interest.

"V.  That it is not true that defendants George Swift, Sherman Stewart or Karl W. Feiser, or any of them, knew that the representation that there was only one note secured by only one deed of trust and that the payment provided by said note was $250.00 per month which included interest was a false representation.

"VI.  That it is true that in reliance upon the said representations by defendants George Swift and Sherman Stewart plaintiffs did enter into said lease and option; did pay lessors $2,000.00; did terminate their employment; did move onto the premises at an expense of $135.00; and did purchase certain chickens.

"VIII.  That it is true that negotiations were carried on by and between plaintiffs Wilson and defendants R. J. Hisey and Tempe E. Hisey in which defendants George Swift and Sherman Stewart acted as agents for said plaintiffs Wilson; that said negotiations were conducted by said defendants Swift and Stewart on behalf of plaintiffs and said defendants Swift and Stewart did in said negotiations act as agents for plaintiffs Wilson; that said negotiations resulted in the execution and delivery of the lease and option hereinbefore mentioned; and that defendants Swift and Stewart prepared and wrote said lease and option.

"IX.  That it is true that defendants Swift and Stewart did not have information, belief or knowledge concerning the

true facts of the encumbrances against the property involved and did not have information, knowledge or belief of the true facts concerning the two notes secured by the deeds of trust or the terms of said notes.

"XI. That it is true that defendants Swift and Stewart failed to exercise the amount of care and diligence required of them as agents of the plaintiffs in negotiating, preparing and writing said lease and option.

"XII. That it is true that defendants accepted as true the statements of defendants Hisey concerning said property and the encumbrances thereon and the note secured by said encumbrances, and made no other effort or investigation to determine the true facts.

"XIII. That it is true that the defendants Swift and Stewart did not suggest or advise that a title search be made on said property and did not advise that an escrow be opened for the consummation of the transaction involving the lease and option.

"XIV. That it is true that plaintiffs did not know there was more than one note and deed of trust against the property and did not know the true terms of said note; and it is true that plaintiffs would not have entered into the lease and option had they known there was more than one note and deed of trust or if they had known the true terms of the two notes and deeds of trust; and it is true that they were not able to comply with the provisions of said notes.

"XVII. That it is true that plaintiffs Wilson relied upon representations and statements made to them that there was only one deed of trust against the property they leased and upon which they took an option and upon the representation that said deed of trust was to secure one note payable at the rate of $250.00 per month including both principal and interest; that it is true these representations were false.

"XVIII. That it is true that defendants Swift and Stewart, on behalf of plaintiffs Wilson, negotiated a lease and option on the property involved and that defendants Swift and Stewart suggested the manner in which the transaction should be handled and completed and suggested the machinery by which the transaction could be effected, and that as a result of these suggestions no escrow was opened and no title search was made.

"XIX. That it is true that defendants Swift and Stewart prepared and wrote the lease and option and at no time did they or either of them check to ascertain the true status of the

title of the property in question or the nature or extent of *of* the obligations which were encumbrances against the property other than to accept as true the statements of the owners of the property with respect thereto.

"XX. That it is true that defendants Swift and Stewart were negligent in the discharge of their duties as agents of plaintiffs Wilson."

These findings are supported by substantial evidence and therefore cannot be here disturbed. (*Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557].)

▇ Appellants argue that this appeal presents the basic question whether, as a matter of law, there is negligence by one who prepares a written lease upon real property for one year and a written option thereon for one year, for which option the stated consideration is $1.00, to fail to recommend that a title search be made upon the real property. However, the evidence shows that plaintiffs relied upon the representations of the defendants, who were their agents, that there was only one trust deed against the property which they leased and upon which they took an option to purchase, and that the trust deed in question was payable at the rate of $250 per month, which payment included both principal and interest. These representations were false. Swift and Stewart negotiated the lease and option on the property; they suggested the manner in which the transaction should be culminated; and prepared the lease and option agreements. While the failure to recommend a title search on the property might not constitute negligence, Stewart made the positive statement to the plaintiffs that there was no other encumbrance on the property except the first trust deed and that the payments thereon included the interest, without seeking to ascertain the true facts. The question whether the defendants were negligent was one of fact for the trial court and its finding that the defendants were negligent in the discharge of their duties as agents for plaintiffs is supported by substantial evidence. Defendants, as agents for plaintiffs, were required to exercise reasonable skill and ordinary diligence and not to act negligently. They were required to exercise the particular skill to be reasonably expected of them and to have special knowledge with respect to the agency assumed. (2 Cal.Jur.2d, Agency, § 113.)

Appellants, in support of their position, rely heavily upon *Graham* v. *Ellmore,* 135 Cal.App. 129 [26 P.2d 696]. However, that action was for damages for fraud and the

question of the liability of an agent for negligence was not there discussed. The agent therein had been told by the owners of the property that there was only one encumbrance on it and there was an implied finding that the salesman had reasonable grounds for believing the statement to be true. In the instant case, the salesman had no information on the subject and made the statement relied upon without ascertaining what the facts were with respect to the second trust deed on the property, and, as is said in *Graham* v. *Ellmore, supra,* pages 132-133: "Whether such statement was warranted by his information and whether he had reasonable grounds for believing the same to be true, depend upon all the circumstances of the particular case and are questions, primarily, for the trial court."

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.